IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

JAMES R. WELCOME,
     Plaintiff,

vs.                            Case No: 3:15cv121/MCR/EMT

RAYMOND E. MABUS,
SECRETARY OF THE NAVY,
     Defendant.
_____/

## REPORT AND RECOMMENDATION

This cause is before the court upon a Motion to Dismiss for Lack of Jurisdiction or, in the Alternative, for Summary Judgment, with incorporated memorandum of law (ECF No. 15), filed by Defendant Raymond E. Mabus, Secretary of the Navy ("Secretary Mabus" or "Mabus"). Secretary Mabus also filed a separate Statement of Facts and supporting evidentiary materials (ECF Nos. 16, 17). Plaintiff James R. Welcome ("Welcome"), a non-prisoner proceeding pro se, filed a response in opposition to the motion and submitted a "Statement of Facts Relied upon in Support of Plaintiff's Objections to Defendant's Motion to Summary Judgment" and supporting evidentiary materials (ECF Nos. 26, 27). The case was referred to the undersigned magistrate judge for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N.D. Fla.

Loc. R. 72.2(E); 28 U.S.C. § 636(b)(1)(B), (C).   Upon review of the parties'
submissions, it is the opinion of the undersigned that the motion filed by Mabus
should be granted.

I.      GENERAL BACKGROUND

Welcome commenced this employment discrimination action on March 23,
2015.  He paid the filing fee in full.  He asserts single-motive claims of discrimination
and retaliation under Title VII of the Civil Rights Act of 1964, as codified at 42
U.S.C. § 2000e *et seq*., based upon his gender (male), race (African American), and
disability ("Diabetic") (*see* ECF No. 1 at 3–4, 6).  He alleges that the discrimination
and retaliation occurred in the form of harassment, a hostile work environment, and
unequal treatment, among other forms (*id*.).  As relief, he asks that Mabus "make
[him] whole, as if discrimination not happen [sic]"; he also seeks back pay, front pay,
and "compensatory and punitive damages for Agency's blatant disregard for the law,
[Welcome's] lost of [sic] enjoyment of life, and causing a chilling effect to the
complaint process" (*id*. at 8).

On October 1, 2015, Secretary Mabus filed the instant motion to dismiss or, in
the alternative, for summary judgment.  Mabus' motion and supporting exhibits are
exceptionally voluminous, totaling well over 1000 pages.  They generally reflect that

Welcome pursued multiple administrative and civil actions during his employment with and subsequent separation/retirement from the Department of the Navy.[1]  More particularly, and in support of Mabus' argument that the instant action should be dismissed because this court lacks jurisdiction over Welcome's claims or on summary judgment, Mabus submitted materials showing that Welcome has filed at least ten claims against the Navy, including claims before this federal court,[2] the Equal Employment Opportunity Commission ("EEOC" or "EEO"), the Merit Systems Protection Board ("MSPB"), and the Federal Circuit Court of Appeals.

Secretary Mabus seeks dismissal on three grounds.  He contends:  (1) that by appealing an adverse decision of the MSPB to the Federal Circuit, Welcome waived his right to bring his discrimination claims in this district court, and thus this court lacks jurisdiction over them; (2) that regardless of the waiver issue, some of the claims Welcome brings here have already been heard by the Federal Circuit as part of Welcome's appeal of the MSPB's decision; and (3) that to the extent the

---

[1] Welcome began working onboard Naval Air Station Pensacola ("NASP") in 1980 and later joined the Fleet and Family Service Center in July 1995, where he remained until he was reassigned to Japan in June 2009.  As explained more fully below, Welcome had a right to return to NASP, and indeed was scheduled to return to work there on February 14, 2011, but he did not return on that date or thereafter, and ultimately he separated from his federal employment in February 2012.

[2] See Johnson, et al. v. Dalton [former Sec'y of the Navy], No. 3:94cv30165/RV; Welcome v. Dalton, 3:96cv108/RV; Welcome v. Dalton, No. 3:96cv174/RV; Welcome v. Johnson [former Acting Sec'y of the Navy], No. 3:03cv80/RV/MD; and Welcome v. Mabus, 3:13cv608/MCR/EMT.

discrimination claims raised here were not part of the MSPB action, the claims were not properly exhausted through the EEOC and thus are barred.  Alternatively, Mabus argues he is entitled to summary judgment on any claim over which this court has jurisdiction and which was administratively exhausted.

On October 2, 2015, this court issued an advisory order concerning summary judgment, which provided Welcome with information concerning Rule 56 review and afforded him an opportunity to respond to Secretary Mabus' motion for summary judgment and to dismiss (*see* ECF No. 18).  As noted above, Welcome filed a response and a separate supporting statement of facts and supporting evidentiary material (ECF Nos. 26, 27).

The undersigned concludes that Welcome's claims are subject to dismissal because Welcome waived them.  Alternatively, Secretary Mabus' motion for summary judgment is due to be granted.

## II.     LEGAL STANDARDS

### A.     Motion to Dismiss Standard

In determining whether dismissal is warranted under Fed. R. Civ. P. 12(b)(6), the allegations of the complaint are taken as true and are construed in the light most favorable to the non-moving party.  *See* Davis v. Monroe Cnty. Bd. of Educ., 120 F.3d

1390, 1393 (11th Cir. 1997).  To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quotation and citation omitted).  A claim is plausible on its face where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). Plausibility means "more than a sheer possibility that a defendant has acted unlawfully." *Id.*  "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quotation and citation omitted).

The determination of whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679 (citation omitted).  The pleader is not entitled to relief "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Id.* (citing Fed. R. Civ. P. 8(a)(2)).  The court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 678 (quotation and citation omitted).  And "bare assertions" that "amount to nothing more than a formulaic recitation of the elements" of a claim

"are conclusory and not entitled to be assumed true."  *Id.* at 681 (quotation and citation omitted).  Stated succinctly:

> Pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Id.* at 679.

B.    Summary Judgment Standard

In order to prevail on a motion for summary judgment, the moving party must show that the nonmoving party has no evidence to support his case or present affirmative evidence that the nonmoving party will be unable to prove his case at trial. *See* Celotex Corp. v. Catrett, 477 U.S. 317, 322–23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).  If the moving party successfully negates an essential element of the nonmoving party's case, the burden shifts to the nonmoving party to come forward with evidentiary material demonstrating a genuine issue of fact for trial.  *Id.*  The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  A dispute is "genuine"

if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*, 477 U.S. at 248. A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.* The nonmoving party must show more than the existence of a "metaphysical doubt" regarding the material facts. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). Speculation or conjecture from a party cannot create a genuine issue of material fact. *See* Cordoba v. Dillard's, Inc., 419 F.3d 1169, 1181 (11th Cir. 2005). "A mere scintilla of evidence in support of the nonmoving party will not suffice to overcome a motion for summary judgment." Young v. City of Palm Bay, Fla., 358 F.3d 859, 860 (11th Cir. 2004); *see also* Celotex Corp., 477 U.S. at 317. The nonmoving party must either point to evidence in the record or present additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency. *See id.*; Owen v. Wille, 117 F.3d 1235, 1236 (11th Cir. 1997) (Rule 56 requires the nonmoving party to go beyond the pleadings and by his or her own affidavits, or by the depositions, documents, affidavits or declarations, admissions, interrogatory answers or other materials on file, designate specific facts showing that there is a genuine issue for trial); Hammer v. Slater, 20 F.3d 1137 (11th Cir. 1994).

Evidence presented by the nonmoving party in opposition to the motion for summary judgment, and all reasonable factual inferences arising from it, must be viewed in the light most favorable to him.  *See* Adickes v. S. H. Kress & Co., 398 U.S. 144, 157, 90 S. Ct. 1598, 1608, 26 L. Ed. 2d 142 (1970); Jones v. Cannon, 174 F.3d 1271, 1282 (11th Cir. 1999).  Nonetheless, the nonmoving party still bears the burden of coming forward with sufficient evidence of every element that he must prove.  *See* Celotex Corp., 477 U.S. at 317.  A motion for summary judgment should be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); Celotex Corp., 477 U.S. at 322.

With regard to the factual positions asserted by the parties, the court must apply the standard set forth in Rule 56(c) of the Federal Rules of Civil Procedure, which provides in relevant part:

> **(1) Supporting Factual Positions.**  A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> > **(A)** citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

(**B**) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

. . . .

(**3**) **Materials Not Cited.** The court need consider only the cited materials, but it may consider other materials in the record.

(**4**) **Affidavits or Declarations.**  An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

Fed. R. Civ. P. 56(c) (2010).  Facts asserted in hearsay statements which are not subject to a hearsay exception, and thus would not be admissible in evidence, are insufficient to show that a fact is genuinely disputed.

If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court will consider the fact undisputed for purposes of the motion for summary judgment, or grant summary judgment if the moving party's motion and supporting materials—including the facts considered undisputed—show that the moving party is entitled to it.  *See* Fed. R. Civ. P. 56(e)(2, 3) (2010).

III.   CLAIMS AND ALLEGATIONS RAISED BY WELCOME IN THE COMPLAINT

Welcome, an African American male, alleges he was employed by the Navy as a federal civil service employee at the Fleet and Family Support Center ("FFSC") onboard NASP as a Transition Assistant Management Program Manager GS-0301-11/Work and Family Life Specialist Supervisor GS-0101-11 from July 25, 1995, through June 5, 2009 (ECF No. 1 at 4).  His first line supervisors were Candice E. Carrier, a white female, from November 1996 to January 2005, and Bobbie Simpkins, also a white female, from January 2005 to June 5, 2009, and from February 13, 2011, to February 7, 2012 (*id*. at 4–5).  Welcome alleges that on June 5, 2009, he transferred to Japan "until he became ill and returned to the FFSC in February 2011" (*id*. at 5).

Welcome states that in September of 2007, he testified for Yonna Diggs, a black female under Welcome's supervision, who had filed an EEO complaint against Ms. Carrier and Ms. Simpkins (ECF No. 1 at 5).  According to Welcome, "the EEOC awarded Ms. Diggs and cited the FFSC for racial discrimination, sexual harassment and hostile work environment" (*id*.).  Welcome alleges that he and "(white male) GS-0185-11 FFSC employee" Garland Hill had been walking for exercise during lunch for approximately eighteen months, but on October 5, 2007—or, the week after Welcome testified for Ms. Diggs—Ms. Simpkins advised Welcome, without "any

prior warning or notice of her decision," that if he wished to continue walking during his lunch break he would need to take leave (*id.*).[3]

Welcome next alleges that in March 2008 all NASP employees at GS-11 or higher were converted to the National Security Personnel System (ECF No. 1 at 5). He claims that he received a lesser rating and pay raise than "the other two white female supervisors and two other employees" (*id.*).  Welcome additionally contends that he was not "properly compensated for his comp time earned on 1/14/2009 by Ms. Simpkins" (*id.*).

Continuing, Welcome states that in December of 2010 he returned to the United States from Japan to attend a funeral and that on December 21, 2010, he visited the FFSC (ECF No. 1 at 5).  He claims that Ms. Simpkins approached him while his was talking to his former FFSC employees, advised him that he was disturbing the workers, advised him that he could talk to them on their lunch breaks, and suggested that he leave the building (*id.*).

Welcome next contends that in or about January or February 2011 he "became sick and had to return to the United States to have emergency surgery" (ECF No. 1 at

---

[3] Welcome additionally contends that Ms. Simpkins' decision conflicted with an instruction of the Naval Region South East Command, Jacksonville, Florida, which purportedly authorized five hours of exercise per week during the lunch hour without the need for taking leave and which instruction became applicable to NASP employees such as Welcome in October 2006 (*see* ECF No. 1 at 5).

5).  He states that on February 2, 2011, he sent Ms. Simpkins an email requesting sick

leave on February 14, 2011, his arrival date (*id*.).  According to Welcome, Ms.

Simpkins responded on February 8, 2011, stating that she would approve three days

only (*id*.).  She noted, however, "as soon as medical documentation is received from

[Welcome's] doctor stating [his] diagnosis, prognosis, and expected date of return to

full duty, she would approve anything over three days" (*id*.).  Welcome contends that

his physician did not know how much time he "would need and his condition before

surgery" and that the surgery was scheduled for February 18, 2011 (*id*.).  Welcome

then states the following, which is repeated verbatim here because it is somewhat

confusing:

> While in Japan, Complainant [Welcome] faxed a request to Ms.
> Simpkins, on 14–16 February, and another leave slip for 17 February
> through 1 April 2011; and a medical certificate from Complainant's
> doctor stating that due to Complainant's medical condition he will
> require indefinite medical leave.  Complainant's medical doctor stated
> that Complainant would require indefinite medical leave before
> Complainant's surgery because Complainant's MRI and SCAT SCAN
> did not look good and he could not provide a diagnosis or prognosis of
> Complainant until after Complainant's surgery.

(*id*.).  Welcome states that on February 25, 2011, Ms. Simpkins faxed him thirteen

pages which contained his new position description, a request for additional medical

documentation, and a "Fit for Duty Requirement," portions of which she apparently

wished to receive back from Welcome by March 11, 2011 (*see id*.).  Welcome states

he saw a psychologist on March 7, 2011, and that on March 8, 2011, he delivered a

letter from the psychologist to the office of Captain Christopher Plummer, the

Commanding Officer of NASP, which letter stated that Welcome had anxiety over the

prospect of returning to the FFSC, because the environment there was hostile to him,

and that he needed to be moved to a new workplace (*id*. at 6).  Welcome appears to

allege that he wanted to speak with Captain Plummer about the issues raised in the

letter, but the "executive Office [sic]" responded by stating that "neither he," nor

Captain Plummer, would respond to Welcome's "request but for him to return to work

in the FFSC with a positive outlook and a clean slate" (*id*.).

Next, Welcome states that on October 28, 2011, Ms. Simpkins faxed him a

letter with the subject "Duty Status," and noted therein that he had been on approved

sick leave since February 14, 2011, that his position was being filled by a temporary

employee, that she could no longer permit a drain on manpower and fiscal resources,

and that if Welcome did not return to work by November 14, 2011, she was going to

propose his removal for excessive approved absences (ECF No. 1 at 6–7).  Welcome

was additionally advised that in order to return to work he would need to provide a

written and signed release to return to work from his physician, and Ms. Simpkins

provided Welcome with a form to complete if he wished to "invoke his Family Medical Leave Act entitlement" (*id.* at 6).[4]

Welcome alleges that he received a "Notice of Proposed Removal," dated January 6, 2012, from Ms. Simpkins, which reflected a "proposal to separate [Welcome] from federal civil service for inability to perform the duties of his position as Work and Family life Supervisor, GS-0101-11, due to excessive approved leave" (ECF No. 1 at 6). Welcome then received a "Decision on [P]roposed Removal," dated February 7, 2012, from Commander Greg Thomas, Executive Officer, NASP, stating that Welcome was removed from his federal civil service position immediately and that his removal would promote the efficiency of the service (*id.*).

Finally, Welcome alleges that after he received the removal decision, he discovered information, pursuant to a Freedom of Information Act request, which supported his claim that his separation from the Navy was the result of a hostile work environment created at the FFSC. For example, Welcome alleges he discovered that the NASP command had: (1) conducted an investigation regarding his visit to the FFSC in December 2010 without his knowledge; (2) barred him from the FFSC building during working hours; (3) and accused him of breaking into the FFSC

---

[4] Welcome states he "had accrued over 2080 hours (one year) sick leave before returning to the FFSC" (ECF No. 1 at 6).

building during the weekend of February 12–13, 2011, upon his return to the United States (ECF No. 1 at 6).  Welcome also alleges he discovered that:  (1) Ms. Simpkins solicited statements from FFSC staff regarding Welcome's return to work in the FFSC; (2) FFSC staff responded to Ms. Simpkins by writing letters and memoranda for the record stating that Welcome "will be coming to a very hostile environment and that no one wants him to be present in the FFSC building"; (3) Ms. Simpkins stated to several FFSC employees that she intended to place Welcome in a small office across the hall from her and harass him until he blew up; and (4) Ms. Simpkins told FFSC employees that as long as she was the FFSC Director Welcome would never be promoted (*id.*).

Based on the foregoing allegations, Welcome raises the following ten[5] claims in his Title VII complaint:

(1)     Complainant was discriminated against based on race (African American), sex (male), disability (diabetic), and reprisal (protective EEO activity) when allegedly harassed, subjected to a hostile work environment, and [on October 5, 2007] was told [by Ms. Simpkins] to take annual leave if he walked during lunch when his co-worker (white male) was not told to take annual leave if he walked during lunch.

---

[5] Welcome alleges ten claims for relief that appear in paragraphs numbered two through eleven in the Statement of Facts section of his complaint (*see* ECF No. 1 at 6–7).  For ease of reference, the undersigned has renumbered Welcome's claims as one through ten, as has Mabus in his motion and in his arguments and supporting materials, as Welcome's first "claim" is in actuality a lengthy factual statement in support of all of his claims for relief.

(2)     Complainant alleges that he was discriminated against [in 2008] when he did not receive the same equal pay raise on his NSPS [National Security Personnel System] rating as the white female supervisors and two other white FFSC employees.

(3)     Complainant alleges that he was discriminated against because of his race (African American) when he did not receive his comp time on January 14, 2009 [by Ms. Simpkins].

(4)     Complainant alleges that he was discriminated against because of his race (African American) and subject to reprisal (prior EEO protective activity) when on February 8, 2011 and February 25, 2011 his supervisor, Bobbie Simpkins required him to provide diagnosis, prognosis, and expected date of return to full duty (additional medical documentation) to support his sick leave request.

(5)     Complainant alleges that he was discriminated against because of his race (African American) and reprisal (prior EEO protective activity) when on October 28, 2011 he received a faxed letter from his supervisor, Ms. Bobbie Simpkins proposing to remove him from his position based on excessive approved absence (sick leave).

(6)     Complainant alleges that he was discriminated against because of his race (African American) and reprisal (prior EEO protective activity) when on October 28, 2011 his supervisor, Ms. Bobbie Simpkins proposed he invoke his Family Medical Leave Act (FMLA) eligibility and provided his [sic] with the forms.

(7)     Complainant alleges that he was discriminated against because of his race (African American) and reprisal (prior EEO protective activity) when on December 22, 2010 Ms. Bobbie Simpkins asked him to leave the Fleet and Family Support Center (FFSC) because he was disturbing the workplace.

(8)     Complainant alleges that he was discriminated against because of his race (African American) and reprisal (prior EEO protective activity)

when on March 30, 2011 his second level supervisor, Commander Greg Thomas, cancelled as [sic] appointment to talk with him.

(9)     Complainant alleges that he was discriminated against because of his race (African American) and reprisal (prior EEO protective activity) and subjected to harassment and a hostile work environment by his supervisor, Ms. Bobbie Simpkins.[6]

(10)    Complainant alleges that he was discriminated against because of his race (African American) and reprisal (prior EEO protective activity) when he received a proposal to remove him from his federal civil service position as Work and Family Life Supervisor GS-0101-11 for (medically) inability to perform the duties of his position due to excessive approved absence (sick leave) on January 6, 2012.

(ECF No. 1 at 6–7 (Claims); *see also* ECF No. 1 at 4–6 (Statement of Facts)).

Welcome states he filed formal charges of discrimination with the EEOC on December 13, 2007, February 20, 2009, and June 3, 2011 (ECF No. 1 at 3). He states that on December 19, 2014, and March 17, 2015, the EEOC issued final decisions notifying him of his right to file a federal civil action ("notice of right to sue"), and he attached the notices to his complaint (*id.* at 4, 9–18). The decision issued on December 19, 2014 was Welcome v. Mabus, Appeal No. 0120112369, EEOC No. 420-2009-00146X, Department of Navy ("DON") Nos. 08-00204-00176 and 09-

---

[6] Welcome does not include a specific date or date range with respect to the allegations of Claim Nine. His claims, however, follow the order of his statement of facts. It thus appears that Claim Nine is a general allegation that each of the specific events identified in the complaint was an act of discrimination, and that those acts created a hostile work environment at the FFSC, which forced him to retire.

00204-01989 (*id.* at 9–13). The decision issued on March 17, 2015 was <u>Welcome v.</u> <u>Mabus</u>, Appeal No. 0120122968, EEOC No. 420-2012-00087X, DON No. 110020402357 (*id.* at 14–18).[7]

IV.   DISCUSSION

A.   <u>Waiver of Discrimination Claims Related to Welcome's Separation from the Navy</u>

On February 7, 2012, the Navy notified Welcome that he was removed from federal civil service, effective immediately, due to excessive approved absence (ECF No. 17-3, Ex. 39, Decision on Proposed Removal).   Welcome was notified of his appeal rights as follows:

[Y]ou may file an appeal to the MSPB not later than 30 calendar days from the dale of the decision letter, or 30 calendar days after the

---

[7] At the time Welcome filed this Title VII case, on March 23, 2015, he was apparently pursuing the EEOC process in <u>Welcome v. Mabus</u>, Appeal No. 0120141644, EEOC No. 420-2013-00069X, DON No. 12-00204-01157 (*see* ECF No. 17-4, Ex. 72).  Welcome filed a formal EEOC charge of discrimination in that case on April 9, 2012, DON No. 12-00204-01157 (*see* ECF No. 17-4, Ex. 69).  In the formal charge, Welcome alleged he was subjected to discrimination and a hostile work environment when the following occurred:  (1) on December 21, 2010, Bobbie Simpkins notified her superiors that Welcome had threatened her safety; (2) on January 13, 2011, Simpkins sent an e-mail to FFSC staff soliciting their comments regarding Welcome's return to work at the FFSC; and (3) on January 25, 2011, Simpkins requested permission to announce to the FFSC staff that the Navy was granted a decision in its favor on one of Welcome's EEOC complaints (ECF No. 17-4, Ex. 69, EEOC Counsel's Report, DON No. 12-00204-01157).  On January 28, 2014, the EEOC's Administrative Judge issued a decision concluding that the evidence did not support Welcome's allegations of discrimination (ECF No. 17-4, Ex. 70).  Welcome was pursuing the EEOC appeals process when he commenced this Title VII case.  He did not identify the formal EEOC complaint in DON No. 12-00204-01157, or the EEOC's final decision on that complaint, as the subject of this Title VII action (*see* ECF No. 1 at 3–4 and attached "right to sue" notices).

date of receipt of the decision letter, whichever is later, to the following address:

> U.S. Merit Systems Protection Board
> Atlanta Regional Office
> 401 Peachtree Street Northwest
> Atlanta. GA 30308-3532

If a party does not submit an appeal within the time set by statute, regulation, or order of a judge, it will be dismissed as untimely filed unless a good reason for the delay is shown.  The judge will provide the party an opportunity to show why the appeal should not be dismissed as untimely.

If you believe this action was based on discrimination on basis of color, age, race, religion, national origin, disability, or sex you may either include this reason and the supporting information in a timely appeal to the MSPB.  Or, you may raise an allegation under the agency's discrimination complaints procedure within 45 days. . . .  [Y]ou may not initially file both a mixed case complaint under the agency's discrimination complaints procedure and an appeal to the MSPB on the same matter.  Whichever is filed first shall he considered an election to proceed in that forum.

(ECF No. 17-3, Ex. 44, Corrected Notice of Employee Rights).[8]

---

[8] On February 27, 2012, four days after Welcome filed his appeal with the MSPB, Welcome contacted the Navy's EEOC counselor alleging he was subjected to discrimination and a hostile work environment when the following occurred:  (1) on December 21, 2010, Bobbie Simpkins notified her superiors that Welcome had threatened her safety; (2) on January 13, 2011, Simpkins sent an e-mail to FFSC staff soliciting their comments regarding Welcome's return to work at the FFSC; and (3) on January 25, 2011, Simpkins requested permission to announce to the FFSC staff that the Navy was granted a decision in its favor on one of Welcome's EEOC complaints (ECF No. 17-4, Ex. 69, EEOC Counsel's Report, DON No. 12-00204-01157).  Welcome filed a formal EEOC complaint of discrimination on April 9, 2012 (see id.).  As discussed supra in note 7, Welcome was apparently pursuing that complaint through the EEOC process when he filed his Title VII complaint in this case.  He did not identify the formal EEOC complaint in DON No. 12-00204-01157, or the EEOC's final decision on that complaint, as the subject of this Title VII action.

On February 23, 2012, Welcome filed an appeal with the MSPB, Docket Number AT-0752-12-0317-I-1, challenging the Navy's action of removing him from federal civil service (*see* ECF No. 17-4, Ex. 73).  Welcome claimed that he was wrongfully removed from federal civil service, in part, because the removal was based upon sick-leave that had been approved (*id.*).  In Welcome's reply brief to the Navy's response to his initial pleading, Welcome asserted claims of discrimination, alleging that he was removed from his federal civil service job because of his race, retaliation, and hostile work environment (ECF No. 17-4, Ex. 79).  On April 18, 2012, the Administrative Judge ("AJ") issued an initial decision, dismissing the appeal as moot, because prior to the Navy's removal decision, Welcome applied for voluntary retirement, and the voluntary retirement was approved; therefore, the Navy rescinded its removal decision and deleted all references to that decision from Welcome's official personnel file (*id.*).  Welcome filed a petition for review of the AJ's decision with the MSPB.  In a decision issued on February 5, 2013, the MSPB determined that Welcome was not removed from service but instead retired and thus his appeal was moot (ECF No. 17-4, Ex. 74).

On March 30, 2012, during the processing of that MSPB appeal, Welcome filed a submission which he alleged that his retirement was involuntary (*see* ECF No. 17-4,

Ex. 76).  The AJ construed the submission as a separate appeal, Docket Number AT-0752-12-0469-I-1, and issued an initial decision on June 1, 2012, dismissing the appeal, because Welcome failed to overcome the presumption that his retirement was voluntary (*id.*).  Welcome filed a petition for review of the AJ's decision with the MSPB.  In a decision issued on February 5, 2013, the MSPB ultimately determined that Welcome's retirement was voluntary and not appealable (*see* ECF No. 17-4, Ex. 76).

Although Welcome primarily challenged the nature of his separation from the Navy in the MSPB proceedings, he also raised allegations of discrimination and retaliation.  For example, as noted in Final Orders of the MSPB dated February 5, 2013, Welcome argued—in seeking review of the AJ's dismissal of both appeals—that his appeals should not be dismissed because "there [were] outstanding issues of unlawful discrimination" (*see* ECF No. 17-4, Ex. 74, p.2).  Additionally, Welcome specifically argued in his petition for review of the AJ's dismissal of his alleged involuntary retirement appeal, that "he was coerced to retire because of racial discrimination and retaliation for his prior protected . . . EEO activity" (ECF No. 17-4, Ex. 76, p. 2).  The MSPB rejected Welcome's claims of racial discrimination and retaliation because he raised them for the first time in his petitions for review (*see*

ECF No. 17-4, Exs. 74, 76).   The MSPB explained however, in affirming the

dismissal of his alleged involuntary retirement appeal, that even considering the

claims of discrimination and retaliation, Welcome would not be entitled to relief

because he had failed to demonstrate that the Navy made his working conditions so

unpleasant that his separation from service was involuntary (ECF No. 17-4, Ex. 76,

p. 3).   More specifically, the MSPB stated the following:

> The appellant is essentially arguing that the agency made working
> conditions so unpleasant that his separation from service was
> involuntary. []   In cases where intolerable working conditions are
> alleged, the Board will find an action involuntary only if the employee
> demonstrates that the employer or agency engaged in a course of action
> that made working conditions so difficult or unpleasant that a reasonable
> person in that employee's position would have felt compelled to resign
> or retire . . . .
>
>     [W]e find that the appellant failed to nonfrivolously assert that his
> daily working conditions were so intolerable that a reasonable person in
> his position would have felt compelled to retire.   While the appellant
> repeatedly claims on review that he was subjected to discrimination and
> retaliation, [], the only specific instance of alleged retaliation he cites is
> an October 5, 2007 incident in which his supervisor informed him that
> he had to take annual leave if he wanted to walk and have lunch during
> his lunch break.

(ECF No. 17-4, Ex. 76, p. 3) (internal references to MSPB record omitted).   Although

the MSPB noted that Welcome specifically identified only the incident of October 5,

2007, as a discreet incident of discrimination or retaliation, the record of the MSPB

proceedings shows that Welcome additionally referenced or relied upon the following

facts or circumstances in presenting his arguments to the MSPB, which he has also

alleged in his employment discrimination complaint filed in this Court:    (1)

"[Welcome's] feeling that his work environment [at the FFSC] would be hostile"; (2)

his visit to the FFSC in December 2010; (3) the Commanding Officer's receipt of the

letter from Welcome's Licensed Mental Health Counselor; (4) the indication in that

letter "that [Welcome] could perform the duties of his job in a hostile free work

environment"; (5) the Agency's and/or Commanding Officer's refusal to respond to

that letter; (6) the "Executive Officer" of NASP cancelling a meeting with Welcome;

(7) Welcome's allegedly improper receipt of "propos[ed] [] removal[s]" from his

position instead of an offer to place him a non-hostile working environment as

suggested by his counselor; and (8) that "he [presumably the Commanding Officer or

Executive Officer] was aware of the history in the FFSC."  *See* Welcome v. MSPB,

No. 13-3093 (Fed. Cir.), MSPB Reply Brief attachments, ECF Nos. 20-3 at 22–23, 20-

5 at 20 (in the MSPB proceedings, Welcome also referenced a letter from his mental

health counselor to the "Commanding Officer," in which the counselor expressed his

opinion that Welcome could perform his job in a hostile-free work environment, and Welcome referenced the Navy's lack of response to the letter).[9]

Welcome appealed both MSPB decisions to the Federal Circuit Court of Appeals, by filing a petition for review on April 1, 2013. *See* Welcome v. MSPB, No. 13-3093 (Fed. Cir.), Petition for Review, ECF No. 1. The Federal Circuit found that the MSPB did not err in holding that Welcome failed to rebut the presumption that his retirement was voluntary and not appealable. *See* Welcome v. Merit Sys. Protection Bd., 542 F. App'x 940, 944 (Fed. Cir. 2013). It thus affirmed the decision of the MSPB, concluding—in short—that Welcome's retirement was not involuntary; it also affirmed the MSPB's other final decision dismissing Welcome's removal appeal as moot. *Id.*

---

[9] The online docket for this Federal Circuit Court of Appeals case may be located on PACER, https://ecf.cafc.uscourts.gov, after logging onto CM/ECF and then searching for Case No. 13-3093. *See* Mangiafico v. Blumenthal, 471 F.3d 391, 398 (2d Cir. 2006) (district court permissibly looked to docket sheets in ruling on motion to dismiss because "docket sheets are public records of which the court could take judicial notice"); Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1278 (11th Cir. 1999) (when considering a motion to dismiss in a securities fraud case, court may take judicial notice of relevant public documents required to be filed with the SEC for the purpose of determining what statements the documents contain); In re Salem, 465 F.3d 767, 771 (7th Cir. 2006) (taking judicial notice of state court dockets and opinions); Dawson v. Mahoney, 451 F.3d 550, 551 (9th Cir. 2006) (taking judicial notice of state court orders and proceedings); United States v. Mercado, 412 F.3d 243, 247–48 (1st Cir. 2005) (taking judicial notice of state court docket entries); United States v. Berrojo, 628 F.3d 368, 369 (5th Cir. 1980) ("The doctrine of judicial notice permits a judge to consider a generally accepted or readily verified fact as proved without requiring evidence to establish it."); *see also* Fed. R. Evid. 201.

Section 7702 of Title 5 of the United States Code governs the prosecution of a "mixed case," which is "an adverse personnel action subject to appeal to the MSPB coupled with a claim that the action was motivated by discrimination."  Butler v. West, 164 F.3d 634, 638 (D.C. Cir. 1999) (citing 5 U.S.C. § 7702).  "The MSPB and EEOC regulations that structure the prosecution of mixed cases are extremely complicated, but they can be reduced to a decision tree, albeit a somewhat elaborate one."  Id.

The employee's first decision in the tree is electing a forum in which to proceed.  Butler, 164 F.3d at 638.  The employee may file a "mixed-case appeal" with the MSPB or a "mixed-case complaint" with the agency EEO office, but not both.[10] Pueschel v. Peters, 577 F.3d 558, 563 (4th Cir. 2009) (citing 5 U.S.C. § 7702; 29 C.F.R. § 1614.302(b) (2008); McAdams v. Reno, 64 F.3d 1137, 1141 (8th Cir. 1995)); Butler, 164 F.3d at 638 (citing 29 C.F.R. § 1614.302(b)).  Although the MSPB does not have jurisdiction over discrimination claims that are not related to adverse actions, it may entertain appeals in "mixed cases," where an employee alleges a Title VII

---

[10] A mixed-case complaint is "a complaint of employment discrimination filed with a federal agency based on race, color, religion, sex, national origin, age or handicap related to or stemming from an action that can be appealed to the [MSPB]."  29 C.F.R. § 1614.302(a)(1).  A mixed-case appeal is "an appeal filed with the MSPB that alleges that an appealable agency action was effected, in whole or in part, because of discrimination on the basis of race, color, religion, sex, national origin, handicap or age."  28 C.F.R. § 1614.302(a)(2).

violation in relation to one of the specified adverse employment actions.[11]  Chappell

v. Chao, 388 F.3d 1373, 1374 (11th Cir. 2004) (citations omitted).  Indeed, in either

a mixed case appeal or a mixed case complaint, Section 7702 directs the MSPB or the

agency EEOC office to consider both the adverse-personnel action and the related

discrimination claim.  *See* Butler, 164 F.3d at 638 (citation omitted).

If the employee elects to pursue a mixed-case appeal with the MSPB, the

employee first receives an initial decision from an MSPB administrative judge ("AJ").

Butler, 164 F.3d at 638 (citing 5 C.F.R. §§ 1201.41(b), 1201.111).  If dissatisfied with

the initial decision, the employee may petition the MSPB for review.  *Id.* at 639.  The

MSPB then issues a final decision, either by denying the petition and rendering the

initial decision final, or by granting the petition and issuing its own decision.  *Id.*

(citing 5 C.F.R. § 1201.113(b)–(c)).

If the employee remains dissatisfied, the next fork in the decision tree is options

for appeal:  the employee may appeal the entire case to federal court, appeal only the

discrimination claim to the EEOC, or appeal the adverse-personnel action to the

Federal Circuit.  Butler, 164 F.3d at 639 (citing 5 U.S.C. § 7703(b); 5 C.F.R.

---

[11] For a case to qualify as a mixed case appeal, an employee must "allege[] that an appealable agency action was effected, in whole or in part, because of discrimination on the basis of race, color, religion, sex, national origin, disability, age, or genetic information."  29 C.F.R. § 1614.302(a)(2).

§§ 1201.120, 1201.157, 1201.175; 29 C.F.R. § 1614.310(b)); Pueschel, 577 F.3d at 563 (citing 5 U.S.C. § 7703).

If the employee pursues an appeal in the Federal Circuit, he abandons his claims of discrimination because the Federal Circuit lacks jurisdiction to entertain discrimination claims.  Pueschel, 577 F.3d at 563 (citing Williams v. Dep't of the Army, 715 F.2d 1485, 1490 (Fed. Cir. 1983) (stating, "Congress did not direct or contemplate bifurcated review" of mixed cases under § 7702)); see also Chappell, 388 F.3d at 1377 (same) (citing Williams, 715 F.2d at 1490); Browder v. Postmaster Gen., U.S. Postal Serv., 449 F. App'x 799, 803 (11th Cir. 2011) (citations omitted). Because of this jurisdictional restriction, the Federal Circuit requires petitioners "to file a statement indicating whether discrimination issues persist in their cases." Smets v. Dep't of Navy, 498 F. App'x 1, 4 (Fed. Cir. 2012) (citing Fed. Cir. R. 15(c)).  "The Rule 15(c) statement allows petitioners to avoid mixed-case jurisdictional issues by expressly waiving discrimination claims."   Smets, 498 F. App'x at 4.

Moreover, if a federal employee appeals a decision to the Federal Circuit, he waives his right to pursue not only any discrimination claims he raised before the MSPB, but also any other discrimination claims arising out of the same facts. Chappell, 388 F.3d at 1378–79 (by appealing his termination claim to the Federal

Circuit, rather than bringing his discrimination and related termination claims in the district court, Chappell waived his right to bring the claims before the district court) *see also* <u>Browder</u>, 449 F. App'x at 803.

Stated differently, "according to the statutory scheme governing review of MSPB final orders, if a federal employee wants to pursue <u>any</u> type of discrimination claim on appeal, the employee <u>must</u> file a complaint in a federal district court, as the federal district court is the only forum in which an employee can appeal <u>both</u> parts of a mixed claim." <u>Chappell</u>, 388 F.3d at 1375–76 (emphases added). "The statutory scheme established by Congress for federal employees requires them either to combine their related employment discrimination and termination claims and pursue them in Federal district court, or to appeal their termination claims to the Federal Circuit and waive any discrimination claims." *Id*. at 1374.

Here, upon the Navy's issuance of its decision to remove Welcome from federal civil service, the Navy properly advised Welcome of his appellate rights. Welcome elected to appeal the decision to the MSPB instead of first filing an EEOC complaint, and in doing so, he was required to raise any allegations of discrimination in his appeal to the MSPB. Welcome did not raise claims of discrimination in his initial pleadings to the MSPB, but he did assert such claims in seeking review of the AJ's

dismissal of his removal appeal as moot, and the AJ's dismissal of his alleged involuntary retirement appeal for lack of jurisdiction.   The MSPB opined that Welcome's discrimination claims were procedurally improper, since he raised them for the first time in his petitions for review of the AJ's decision; but the MSPB nevertheless found the discrimination claims without merit.[12]

Welcome was advised of this jurisdictional restriction.  In the MSPB's final orders issued on February 5, 2013, Welcome was notified of his appellate rights (ECF No. 17-4, Exs. 74, 76).  Both orders notified Welcome that information pertaining to pro se appeal was available on the website for the Federal Circuit Court of Appeals (Welcome proceeded pro se before the MSPB and in the Federal Circuit) (*see id.*, referencing www.cafc.uscourts.gov, with directions to search for Rules of Practice, Guide for Pro Se Petitioners and Appellants, Forms/Sections 5, 6, and 11).  Section Six of the Pro Se Guide, titled "Discrimination claims in Merit Systems Protection Board cases," to which Welcome was referred, states:

> This court [the Federal Circuit Court of Appeals] does not have jurisdiction to review cases involving bona fide claims of discrimination based on race, sex, age, national origin, or handicap that were raised before and considered by the Merit Systems Protection Board.  **If your**

---

[12] By addressing the discrimination claims on the merits, instead of concluding that the MSPB lacked jurisdiction to review them, the MSPB implicitly found that Welcome's discrimination claims were related to his adverse employment action.

> **case involves such claims and you are unwilling to abandon them
> forever, you must proceed in a district court (which will hear all
> your claims, both discrimination and nondiscrimination)** or before
> the Equal Employment Opportunity Commission (which will hear your
> discrimination claims only).  **You may waive your discrimination
> claims on the Federal Circuit Rule 15(c) form sent to you by the
> clerk.**  If you fail to complete and return the form within <u>14 days</u> after
> the date of docketing, the clerk will dismiss your petition for review.  A
> discrimination issue raised for the first time in this court does not affect
> the jurisdiction of the court to decide the issues raised before the Board,
> and such a discrimination claim will be disregarded.

*See* www.cafc.uscourts.gov (search Rules of Practice/Guide for Pro Se Practitioners

and Appellants/Section 6) (last visited August 17, 2016) (bolded emphases added).

Welcome submitted the Rule 15(c) waiver form to the Federal Circuit.  He

checked option one on the form, which indicates that:  "No claim of discrimination

. . . has been or will be made by me in this case."  *See* <u>Welcome v. MSPB</u>, No. 13-

3093 (Fed. Cir.), Petitioner's Fed. Cir. R. 15(c) Statement Concerning Discrimination,

ECF No. 2 (attached).  Welcome did not check option two, the only other potentially

applicable option, which states, "Any claim of discrimination . . . raised before and

decided by the [MSPB] or arbitrator has been abandoned or will not be raised or

continued in this or any other court." (*id.*).  Thus, although Welcome did not

acknowledge that he raised discrimination claims before the MSPB or expressly waive

them by checking option two, the record makes clear—as it did in <u>Smets</u>—that

Welcome indeed raised allegations of discrimination, despite his selecting option one on the form instead of option two.  *See* Smets, 498 F. App'x at 4 ("Ms. Smets filed a Rule 15(c) statement, but instead of waiving her discrimination claims, Ms. Smets stated that "[n]o claim of discrimination by reason of race, sex, age, national origin, or handicapped condition has been or will be made in this case. . .  Of course, the administrative judge's initial decisions make clear that Ms. Smets made allegations of discrimination . . . .").  Here, as in Smets, the MSPB decisions make clear that Welcome raised claims of discrimination, which claims ultimately were rejected.

The undersigned thus concludes that Welcome knowingly waived his right to bring those claims of discrimination he brought before the MSPB—and any claims of discrimination that are related to his separation and the events leading up to his separation from the Navy—in this district court by pursuing his adverse action or termination claim in the Federal Circuit.  *See, e.g.*, Lee v. United States, 544 F. App'x 898, 901 (11th Cir. 2013) ("if the federal employee appeals a decision to the Federal Circuit, he 'waives his right to pursue not only any discrimination claims he raised before the MSPB, but also any other discrimination claims arising out of the same facts'") (quoting Chappell, 388 F.3d at 1378 (noting in relevant part that the MSPB's order explicitly stated that Chappell's discrimination and related termination claims

could only be pursued in a district court <u>and</u> that Chappell had informed the Federal

Circuit that he did not plan on pursuing his discrimination claims elsewhere)).

As in <u>Chappell</u>, Welcome was clearly instructed that if he wished to raise <u>both</u>

discrimination claims (e.g., Title VII-type claims) and non-discrimination claims (his

termination or allegedly forced retirement claim), he must proceed in a district court,

yet he chose to proceed in the Federal Circuit, well aware of the consequences of so

proceeding and well aware that he had raised claims of discrimination in the MSPB

proceedings.  *See* <u>Chappell</u>, 388 F.3d at 1378–79 (noting that Chappell had "ample

notice" of the consequences of filing his appeal in the Federal Circuit and that he had

"numerous opportunities to avoid those consequences").  Additionally, as in <u>Chappell</u>,

Welcome informed the Federal Circuit that he did not plan on pursuing his

discrimination claims elsewhere

In a similar case, the District Court in the Eastern District of Virginia noted that

"a litigant may not have 'two bites at the apple,' [and that the employee] waived her

opportunity to remove her appeal to the district court, where both her discrimination

and nondiscrimination claims could be heard, when she appealed to the Federal

Circuit." <u>Parker v. Dep't of Def.</u>, No. CIV.A. 03-431-A, 2003 WL 23641757, at *2

(E.D. Va. Oct. 27, 2003), *aff'd sub nom.* <u>Parker v. U.S. Dep't of Def.</u>, 96 F. App'x 892

(4th Cir. 2004).  The <u>Parker</u> court, referencing the Federal Circuit's Guide for Pro Se

Practitioners, noted *supra*, pointed out that an appellant must <u>either</u> file a written

waiver of his or her discrimination claims utilizing the Rule 15(c) waiver form <u>or</u>

remove his or her case to the appropriate district court for review.  *Id*. (emphasis

added) (citing  in relevant part <u>Davidson v. U. S. Postal Serv.</u>, 24 F.3d 223, 223–24

(Fed. Cir. 1994) (ordering that petitioner must file "either (1) a request for the [Federal

Circuit] to proceed which must be accompanied by the appropriate waiver, or (2) a

request for transfer to a particular United States district court."); <u>Daniels v. U.S. Postal</u>

<u>Serv.</u>, 726 F.2d 723, 724 (Fed. Cir. 1984) (ruling that a waiver of a claim of

discrimination must be by an express written statement)).  Continuing, the <u>Parker</u>

court emphasized:

> [A]n appellant is precluded from relitigating discrimination claims
> before the district court when he splits his discrimination and
> nondiscrimination claims between the Federal Circuit and the district
> court.  <u>Smith v. Horner</u>, 846 F.2d 1521, 1524 (D.C. Cir. 1988) (The
> appellant "could also be held precluded from litigating his Title VII
> claim because he "split" his two claims.  [The appellant] chose to litigate
> his disability claim in a court (the Federal Circuit) that could hear less
> than his entire claim instead of going to the district court . . . .").
>
> In <u>Smith</u>, the appellant chose to dispose of his nondiscrimination
> claims before the Federal Circuit.  <u>Id</u>. at 1523.  The Clerk advised the
> appellant that the Federal Circuit will not hear discrimination claims, but
> rather, he may remove his claim to the district court, which can hear both
> his discrimination and nondiscrimination claims. <u>Id</u>. at 1522–23.  The

Court of Appeals ruled that the appellant waived her Title VII claim by signing the written waiver of her discrimination claims she filed in the Federal Circuit.  Furthermore, to permit an appellant to pursue [her] discrimination claim in the District Court notwithstanding [her] waiver in the Federal Circuit would undermine that court's "efforts to prevent sequential forum shopping."  Id. at 1524.

In the instant case, Defendant avers, and Parker does not refute, that she submitted a Rule 15(c) waiver of her discrimination claims to the Federal Circuit . . ., and [three days later] Parker filed the instant appeal with this Court . . . .  Parker's appeal was set for review by a three judge panel on July 11, 2003, and the Federal Circuit affirmed the MSPB's determination on July 14, 2003.  Hence, because Parker waived her Title VII claims and submitted her appeal to the Federal Circuit, which cannot hear discrimination claims, she effectively waived her discrimination claims forever.  Therefore, she fails to state a claim upon which relief may be granted. . . .

Parker also fails to state a claim for which relief may be granted because her appeal was docketed and decided by the Federal Circuit.  The Guide alerts the pro se petitioner that the Federal Circuit will not hear discrimination claims, but rather, such claims must either be abandoned forever or removed to district court.  Fed. Cir. R. Apps. at 132 (Guide for Pro Se Petitioners and Appellants).  Parker had the opportunity to litigate both claims before a court of competent jurisdiction, but instead chose to split them. . . .  Thus, Parker may not waive her discrimination claims to secure a forum in the Federal Circuit, quickly assert her discrimination claims in this Court, and then hope to gain a second review by reasserting her discrimination claims.  Litigants are precluded from "two bites at the apple."  Therefore, Parker fails to state a claim upon which relief may be granted because she waived her opportunity to appeal to this forum and her appeal was decided by the Federal Circuit.  Accordingly, Plaintiff's claim is dismissed for lack of jurisdiction, and Defendant's Motion to Dismiss is granted.

Parker, 2003 WL 23641757, at **3–4 (footnotes omitted).

Just as in <u>Parker</u> and <u>Smith</u>, Welcome chose to pursue only his nondiscrimination claims by filing his appeal to the Federal Circuit.  Welcome was advised that the Federal Circuit would not hear discrimination claims, and that if he wished to pursue his discrimination claims, he could remove his claims to an appropriate district court, which had jurisdiction to hear both his discrimination and nondiscrimination claims.  Welcome chose to proceed in the Federal Circuit and submitted a Rule 15(c) waiver form.  To allow him to purse his discrimination claims here would undermine the Federal Circuit's efforts to prevent sequential forum shopping.  Accordingly, the undersigned concludes that all of Welcome's claims raised in this Title VI action are waived because they all relate to the allegedly hostile and retaliatory work environment at the FFSC and the events leading up to and surrounding his separation from the Navy.[13]

B.      <u>Summary Judgment</u>

_____

[13] To the extent all of Welcome's claims are not subject to dismissal as waived, then certainly the following claims that were specifically raised in the MSPB proceedings are subject to dismissal as waived:  Claims One and Seven (respectively, the incident of October 5, 2007, and Welcome's visit to the FFSC in December 2010), as well as Claims Four through Six and Eight through Ten, all of which are inextricably intertwined with the events surrounding his separation from the Navy.  To the extent Claims Two, Three, and Nine are not subject to dismissal as waived, they will be discussed *infra*, as will Claims One, Four through Eight, and Ten, as an alternate basis for dismissal exists as to all of Welcome's claims.

To the extent any of Welcome's claims are not waived, the undersigned concludes that summary judgment should be granted in favor of Mabus as to all of them.

Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1).  To establish a prima facie case of racial discrimination, a plaintiff must show (1) he belongs to a protected class; (2) he was qualified to do the job; (3) he was subjected to adverse employment action; and (4) his employer treated similarly situated employees outside his class more favorably. Crawford v. Carroll, 529 F.3d 961, 970 (11th Cir. 2008) (citing Knight v. Baptist Hosp. of Miami, Inc., 330 F.3d 1313, 1316 (11th Cir. 2003) (per curiam)).   With respect to the third element, a plaintiff must prove that his employer took actions that materially changed the terms, conditions, or privileges of employment.  Smith v. City of Greensboro, No. 15-11643, 2016 WL 1425953, at *3 (11th Cir. Apr. 12, 2016) (citing Kidd v. Mando Am. Corp., 731 F.3d 1196, 1202 (11th Cir. 2013)).

Title VII also prohibits retaliation against an employee "because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing [thereunder]."  42 U.S.C. § 2000e–3(a).  A prima facie case of retaliation under Title VII requires the plaintiff to show that:  (1) he engaged in an activity protected under Title VII; (2) he suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action.  Pennington v. City of Huntsville, 261 F.3d 1262, 1266 (11th Cir. 2001).   As for the second element, the "type of employer conduct considered actionable [in the retaliation context] has been broadened from that which adversely affects the plaintiff's conditions of employment or employment status to that which has a  materially adverse effect on the plaintiff, irrespective of whether it is employment or workplace-related."  Crawford, 529 F.3d at 973 (citing Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 67–68, 126 S. Ct. 2405, 165 L. Ed. 2d 345 (2006)); accord Lore v. City of Syracuse, 670 F.3d 127, 163–64 (2d Cir. 2012) ("If the adverse-action element of a Title VII retaliation action can be satisfied by an action causing the employee harm outside the workplace, a fortiori an act in retaliation for the employee's exercise of a constitutional right need not be tied to harm in the workplace.").   To determine whether the employer's conduct had a

materially adverse effect, the court should consider the totality of circumstances "judged from the perspective of a reasonable person in the plaintiff's position." Burlington, 548 U.S. at 71, 126 S. Ct. 2405 (internal quotation marks omitted).

A plaintiff may prove a prima facie claim of intentional discrimination through direct evidence, circumstantial evidence, or statistical proof. Rioux v. City of Atlanta, Ga., 520 F.3d 1269, 1274 (11th Cir. 2008). Once the plaintiff has made a prima facie case, a rebuttable presumption arises that the employer has acted illegally. *Id.* The employer can rebut that presumption by articulating one or more legitimate non-discriminatory reasons for its action. *Id.* If it does so, the burden shifts back to the plaintiff to produce evidence that the employer's proffered reasons are a pretext for discrimination. *Id.* Despite these shifts in the burden of production, the ultimate burden of persuasion remains on the plaintiff to show that the defendant intentionally discriminated against him. Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981); Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1088 (11th Cir. 2004).

Similarly, in the context of retaliation claims, once a plaintiff has established a prima facie case, the employer then has an opportunity to articulate a legitimate, non-retaliatory reason for the challenged employment action. Pennington, 261 F.3d

at 1266 (citations omitted).  The ultimate burden of proving by a preponderance of the evidence that the reason provided by the employer is a pretext for prohibited, retaliatory conduct remains on the plaintiff.  *Id.*

        1.      <u>Claims One, Four Through Eight, and Ten</u>

In each of these claims, Welcome alleges both discrimination and retaliation with respect to various incidents that occurred on October 5, 2007 (Claim One), December 22, 2010 (Claim Seven), and in 2011 following his return from Japan (Claims Four through Six, Eight, and Ten).  With respect to each of these incidents, Welcome has failed to establish a prima facie case of discrimination or retaliation because he has not shown that he suffered an adverse employment action as to any of these claims.

With respect to Claim One, Welcome alleges Ms. Simpkins notified him that if the time he spent walking, obtaining his lunch, and eating his lunch exceeded his 30-minute paid lunch break, he would be required to take annual leave for the excess time.  Welcome has not shown that this materially changed the terms, conditions, or privileges of his employment, as is required to state a prima facie claim of discrimination.  <u>Smith</u>, 2016 WL 1425953, at *3 (citing <u>Kidd</u>, 731 F.3d at 1202); *see also* <u>Davis v. Town of Lake Park, Fla.</u>, 245 F.3d 1232, 1239 (11th Cir. 2001) ("to

prove adverse employment action in a case under Title VII's anti-discrimination clause, an employee must show a *serious and material* change in the terms, conditions, or privileges of employment").  Nor has Welcome shown that Ms. Simipkins' conduct had a materially adverse effect on him, irrespective of whether it was employment or workplace-related, as is required to state a prima facie case of retaliation.  Crawford, 529 F.3d at 973 (citing Burlington N. & Santa Fe Ry. Co., 548 U.S. at 67–68).  Under the totality of circumstances "judged from the perspective of a reasonable person in [Welcome's] position" one simply cannot conclude that actions of which he complains (Ms. Simpkins' notifying him that if the time he spent walking, obtaining his lunch, and eating his lunch exceeded his 30-minute paid lunch break, he would be required to take annual leave for the excess time) would have had a materially adverse effect upon him.  Burlington N. & Santa Fe Ry. Co., 548 U.S. at 71, 126 S. Ct. 2405 (internal quotation marks omitted).  Therefore, Welcome failed to establish a prima facie case of discrimination or retaliation as to Claim One.

Likewise, Ms. Simpkins' requiring documentation of Welcome's illness (the basis for Claim Four), proposing Welcome's removal from federal civil service due to excessive approved absences (the basis for Claims Five and Ten), proposing that Welcome invoke FMLA leave (the basis for Claim Six), asking Welcome to leave the

FFSC on one occasion at a time when he was not employed there (the basis for Claim

Seven), and Commander Greg Thomas' cancelling an appointment with Welcome (the

basis for Claim Eight) are not adverse employment actions under either the

discrimination or retaliation standards.

    2.  <u>Claims Two and Three</u>

   In these claims Welcome alleges discrimination (but not retaliation) based upon

a purportedly unequal pay raise in 2008 and a denial of twenty-five (25) minutes of

compensatory ("comp") time on January 14, 2009.

   Welcome raised both of these claims before the EEOC in Hearing No. 420-

2009-00146X (DON Nos. 08-00204-00176 and 09-00204-01989) (*see* ECF No. 17-3,

Ex. 59), as claims numbered fifteen and sixteen, respectively (*id*. at 241).  The EEOC

determined that the decision regarding Welcome's pay raise was based on

performance and that Welcome failed to show that the Agency's articulated reason

was pretextual or that other similarly situated supervisors with the same performance

as he received a higher raise for prohibited reasons (*id*.).  Similarly, with regard to the

comp time issue, the EEOC found that Welcome's supervisor did not approve his

request for twenty-five minutes of comp time because Welcome failed to request the

time in advance as the Agency's regulations required, and that the Agency's

explanation for the denial was not pretextual, nor did Welcome show he was "disparately treated" (*id.* at 252).

With respect to Claim Two, Welcome has failed to establish a prima facie case of discrimination because he has not shown that his employer treated similarly situated employees outside his class more favorably.  In his complaint, Welcome alleges only in the most general terms that he did not receive the same pay raise "as two other white female supervisors and two other [white FFSC] employees" (*see* ECF No. 1 at 5, 6).  In his Statement of Facts ("SOF"), filed in opposition to Mabus' motion for summary judgment, Welcome adds:

> Commander Naval Region South East (CNRSE) Pay Pool brief January 2009 showing that NAS Pensacola (NV5200204) received: a) average rating 3.16; b) average shares 1.81; c) number of employees 149; d) employees rated 145.  Shares distribution shows the number of employees that received 1 share = 37.2%; 2 shares = 42.1%; 3 shares = 14.5%; and 4 shares = 4.1 %.  Did not show the distribution of shares received and the number of employee by race and sex in Naval Air Station Pensacola command[.]

| Employee | Rating | Share | Race | Sex | Bonus | Salary Increase | Shares $ |
|---|---|---|---|---|---|---|---|
| Plaintiff | 3 | 1 | B | M | $229 | $1,307 | $1,536 |
| M. Brady | 4 | 3 | W | M | $686 | $3,922 | $4,608 |
| D. Huffman | 3 | 2 | W | F | $498 | $2,846 | $3,344 |
| N. Fielder | 3 | 2 | W | F | $485 | $2,774 | $3,259 |
| R. Price | 3 | 2 | W | F | $2,224 | $741 | $2,965 |
| R. Sta[r]ling | 3 | 2 | W | F | $441 | $2,552 | $2,963 |
| A. Pearson | 3 | 2 | B | F | $419 | $2,394 | $2,813 |

Plaintiff, the only African American male received the smallest bonus ($229); salary increase ($1,301); and smallest dollar share ($1,536).  M. Alice Pearson, African American female received the next smallest amount in comparison to the White FFSC employees.

FFSC Pensacola Employees wage comparison after NSPS implemented in 2008[:]

| Employee | Wage before Share | Wages after Share | Increase |
|----------|-------------------|-------------------|----------|
| Plaintiff | 33.94 | 35.46 | 1.52 |
| M. Brady | 33.94 | 36.88 | 2.94 |
| P. Hain | 31.05 | 33.08 | 2.03 |
| D. Huffman | 36.95 | 39.38 | 2.43 |
| N. Fielder | 36.01 | 38.37 | 2.36 |
| V. Young | 25.68 | 27.27 | 1.59 |

Plaintiff, an African American male received the smallest wage increase ($1.52) compared to the two (2) white female supervisors, and others whites in the FFSC.

(ECF No. 27, Welcome's SOF, at 3–4, ¶¶ 14–16).

The relevant and undisputed facts for summary judgment purposes are as follows.  The amount of the payout that each employee in the FFSC received from the Pay Pool was determined by the number of "shares" awarded to that employee and the employee's salary during the pay pool cycle (*see, e.g.*, ECF No. 17-1 at 30–47).  The range of shares available to the employee was based upon the employee's Final Rating of Record, which was determined by the employee's annual performance rating given

by the Rating Official/Supervisor, as reviewed by a Higher Level Reviewer (*see id.* at 39, 41).    Calculation of the Final Rating of Record began with the Rating Official/Supervisor's rating the employee, on a scale of 1 to 5, on his or her performance of Job Objectives (*see, e.g.*, ECF No. 17-1 at 30–47).[14]   The Rating Official/Supervisor could apply a Contributing Factor Adjustment of +1, -1, or 0, to each Job Objective rating, based upon "attributes of job performance that are significant to the accomplishment of individual job objectives" (*id.* at 32–39).  This resulted in an Adjusted Rating for each Job Objective (*id.*).  The Adjusted Ratings were then averaged, to reach the employee's Average Score (*see id.* at 39).  The Average Score was then rounded up or down, to reach the Final Rounded Score or Rating of Record (*id.*).  The employee's Final Rating of Record and payout was based upon the following:

| Rating of Record | Average Score Range | Share Range Available |
| --- | --- | --- |
| 5 | 4.51 to 5.00 | 5 - 6 shares |
| 4 | 3.51 to 4.50 | 3 - 4 shares |
| 3 | 2.51 to 3.50 | 1 - 2 shares |

---

[14] Job objectives are defined as "expressions of performance expectations in the performance plan that are linked to the organizations' goal(s) and mission(s).  Job objectives are used to communicate major individual, team, and/or organizational responsibilities and/or contributions and the related outcomes and accomplishments that are expected of the employee during the appraisal period." (*see* ECF No. 17-1 at 32).

| 2 | 2.00 to 2.50 | No shares |
| 1 | N/A | No shares |

Welcome asserts that he received only 1 share of the payout, whereas white employees with the same Rating of Record of 3 received 2 shares. Welcome claims that the reason he received only 1 share was his race, African-American. However, the undisputed record evidence demonstrates that another African-American employee in the FFSC, specifically, A. Pearson, also had a Rating of Record of 3 and received 2 shares of the payout, like the white employees (ECF No. 17-1 at 129, 164). Further, the reason that the other employees who had Ratings of Record of 3 like Welcome (specifically, N. Fielder, S. Starling, A. Pearson, R. Price, and D. Huffman), received 2 shares of the payout was because all of them had an Average Score of 3.33, whereas Welcome had an Average Score of 3.00 (ECF No. 17-1 at 30, 67, 71, 96, 129, 164, 176; ECF No. 17-2 at 25, 37, 74, 117, 126). This is because all of the other employees (including the other African-American employee, A. Pearson) received a Contributing Factor adjustment of +1, but Welcome did not (*see* ECF No. 17-1 at 30–187; ECF No. 17-2 at 1–188).

Additionally, the amount of the payout distribution made to <u>all</u> employees in the FFSC (awarded as a bonus and a base salary increase) was calculated by

multiplying the employee's base salary on the last day of the pay pool cycle (September 30, 2008) by 2.4543% (*see* ECF No. 17-1 at 30, 71, 129, 176; ECF No. 17-2 at 37, 117).  This was an objective, mathematical calculation.

Welcome has failed to show that the lesser amount of pay raise he received was the result of racial discrimination.  Therefore, Mabus is entitled to summary judgment on Claim Two.

With respect to Claim Three, Welcome alleges he was discriminated against in January 2009 when he was denied twenty-five minutes of comp time.  Welcome has again failed to establish a prima facie case of discrimination because he cannot show that he suffered an "adverse action" regarding the denial of this comp time.  Stated simply, being deprived of twenty-five minutes of comp time on one occasion does not constitute a serious or material change in the terms, conditions, or privileges of Welcome's employment.   Davis, 245 F.3d at 1239; *see also* Smith, 2016 WL 1425953, at *3 (citation omitted).  Furthermore, the undisputed facts, as set forth below, show that in actuality Welcome was denied only approximately 4.2 minutes of the comp time he sought, further eroding any argument that he suffered an adverse employment action.

Even if Welcome had established a prima facie case, however, Mabus has articulated a legitimate non-discriminatory reason for its action.  In her declaration, Ms. Simpkins avers as follows:

> Mr. Welcome alleges . . . that I discriminated against him for allegedly not approving his request for ".42 minutes" [sic] of compensatory time for pay period January 5 through January 17, 2009. During that time period, Mr. Welcome worked a flexible work schedule of a variable week schedule.  The basic work requirement of a flexible work schedule is the number of hours, excluding overtime hours, an employee must work or otherwise account for by leave, credit hours, holiday hours, excused absence, compensatory time off, or time off as an award.  No more than three credit hours may be earned per pay period. Compensatory time off in lieu of overtime pay derives from an employee's entitlement to pay for overtime work.  One hour or 6-minute increments thereof, of compensatory time off may be earned for each hour, or 6-minute increments thereof, of overtime work performed. Overtime and compensatory time earned is to be approved in advance by supervisors, except in an emergency.

> On the morning of January 14, 2009 I assigned a tasker [sic] to Mr. Welcome to complete before the end of that day.  Mr. Welcome sent me an e-mail several days later requesting his time card be corrected to reflect compensatory time earned on January 14, 2009 . . . .  I had no compensatory time request from Mr. Welcome at the time I completed the time cards on January 15, 2009 . . . .  I did not receive Mr. Welcome's request for permission to work compensatory time on January  14, 2009 from 1600 (4:00 p.m.) to 1625 (4:25 p.m.) until January 27, 2009 . . . .  I advised Mr. Welcome that I would correct his time card but in the future he needed to have approval prior to using compensatory time.  I further explained to Mr. Welcome that his time card for that pay period would not include the additional credit hour minutes as he had gone over the three hour credit limit for that pay period.  On February 6, 2009 I approved the request, corrected his time

card, and reduced credit hours as he was over the three hour credit limit for the pay period.  I authorized .35 hours compensatory time (Code CE) and .53 credit hours earned (Code CD).

(ECF No. 16-2 at 31–32; *see also* ECF No. 16, Mabus' SOF, at 6, ¶¶ 31–32).

Mabus has thus established that Ms. Simpkins' actions regarding Welcome's request for compensatory leave were legitimate, non-discriminatory, and made in accordance with applicable rules and regulations.  As before, Welcome has not produced any evidence that the employer's proffered reason regarding his comp time is a pretext for discrimination.  Indeed he acknowledges that ultimately Ms. Simpkins "approved [his] comp time request . . . on February 3, 2009," though he appears to take issue with the two-week delay between the time his request was made (January 15) and the time his request was approved (*see* Welcome's SOF, ECF No. 27, at 5, ¶ 30).  The delay is not an adverse action and, in any event, Ms. Simpkins has offered a legitimate non-discriminatory explanation for both her actions and the timing thereof, which Welcome has not shown are pretexts for discrimination.

### 3.    Claim Nine

In Claim Nine, Welcome alleges:

Complainant alleges that he was discriminated against because of his race (African American) and reprisal (prior EEO protective activity) and subjected to harassment and a hostile work environment by his supervisor, Ms. Bobbie Simpkins.

(ECF No. 1 at 7).  As previously noted, it appears that Claim Nine is a general allegation that each of the specific events identified in Welcome's Title VII complaint was an act of discrimination, and that those acts created a hostile work environment that forced him to retire.

This court has previously determined, however, that none of the underlying acts or events of which Welcome complains constitute discrimination or retaliation under the relevant standards.  As none are individually discriminatory or retaliatory, their combined effect is not discriminatory or retaliatory.  Further, Welcome waived his right to bring a hostile work environment claim in relation to his retirement, by appealing the MSPB's decision to the Federal Circuit, instead of appealing his retirement case to a federal district court, as previously discussed.[15]

---

[15] As noted *supra*, Welcome seeks as relief back pay, front pay, and to be made whole.  It thus appears he is effectively claiming that the discriminatory acts of which he complains forced him to retire and therefore that his separation from the Navy was akin to a wrongful termination.  *See, e.g.*, Weaver v. Casa Gallardo, Inc., 922 F.2d 1515, 1526, 1528 (11th Cir. 1991), *superceded by statute on other grounds*, Civil Rights Act of 1991, Pub. L. No. 102–166, § 101, 105 Stat. 1071. (citations omitted) (in light of Title VII's goal of making a prevailing plaintiff "whole" and restoring him to the economic position he would have occupied but for the employer's illegal discrimination, the Eleventh Circuit recognizes that "[i]n addition to back pay, prevailing Title VII plaintiffs are presumptively entitled to either reinstatement or front pay"); Farley v. Nationwide Mut. Ins. Co., 197 F.3d 1322, 1338 (11th Cir. 1999) (reinstatement is the preferred remedy, as it "offers the most likely means of making a plaintiff whole by allowing her to continue her career as if the discrimination had not occurred"); *see also* Nord v. U.S. Steel Corp., 758 F.2d 1462, 1473 (11th Cir. 1985) (holding that prevailing Title VII plaintiffs are "presumptively entitled to reinstatement under the 'make whole' policy") (citing Darnell v. City of Jasper, 730 F.2d 653, 655 (11th Cir. 1984)).  The Federal Circuit, however, has already considered and resolved the question of the voluntariness of Welcome's retirement.

Accordingly, for the foregoing reasons, it is respectfully **RECOMMENDED**:

1.      That the Motion to Dismiss for Lack of Jurisdiction or, in the Alternative, for Summary Judgment (ECF No. 15) be **GRANTED**

2.      That the Clerk be directed to enter judgment in favor of Secretary Mabus.

At Pensacola, Florida, this 22nd day of August 2016.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M.  TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**